**Virginia BECKER, a/k/a Virginia Ash, Respondent,**

v.

**Jack D. BECKER, Appellant.**

No. 52739.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 22, 1987.

Motion for Rehearing and/or Transfer
Denied Jan. 26, 1988.

Application to Transfer Denied
March 15, 1988.

Thomas J. Frawley, St. Louis, for appellant.

Donald H. Clooney, Timothy R. Anderson, St. Louis, for respondent.

GRIMM, Judge.

Father appeals the denial of his motion to remove the minor children from Missouri to Texas; and the transfer of their custody to mother, as well as the award of child support and attorneys' fees to mother. We affirm.

Father raises three allegations of error. First, that the trial court erred in denying his motion to remove the parties' minor children from the state and in transferring custody of the children to mother, saying that the trial court ignored the best interests of the family and focused solely on the preferences of the minor children. We disagree, because there was sufficient evidence for the trial court to find a change of circumstances and that transfer of custody was in the children's best interests. Second, that the trial court erred in ordering father to pay mother $400 per month per child for child support since mother introduced no evidence of the expenses for the children and she was able to contribute to their support. We disagree, because the amount of child support to be awarded rests within the sound discretion of the court, its judgment must be affirmed unless the evidence is "palpably insufficient" to support it, and the evidence was not "palpably insufficient." Third, that the trial court erred in ordering father to pay $1,600.00 toward mother's attorney's fees because she is better able to pay her own fees and she failed to establish the necessary circumstances to support such an award. We disagree, because awards of attorneys' fees are in the broad discretion of the trial court, may be overruled only if there is a manifest abuse of discretion, and we do not find such abuse. *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. banc 1979).

The 1979 dissolution decree awarded custody of the couple's two children, a son born in 1972, and a daughter born in 1974, to mother. Father was awarded visitation and temporary custody and was ordered to pay $250 per month per child for support.

In 1981, mother filed a motion requesting permission to remove the children from Missouri and take them to Florida with her and her husband. Father, in response, filed a motion seeking custody of the children. In denying mother's request and granting father's motion, the court, in its findings of fact, stated that both children are good students, "both maternal and paternal grandparents of the children live in the St. Louis area and both sets of grandparents have a close relationship with the children, seeing them frequently and caring for them from time to time," and that it was not in the best interests of the children for them to move to Florida.

Later, mother moved back to St. Louis from Florida so she could be close to and spend more time with the children, and in February, 1983, she filed a motion seeking custody of the children. In its December, 1984, order denying her request, the trial court determined that there had not been a change of circumstances to justify the transfer of custody. However, it is noted that the court found both mother and father are "fit parents" and "though the minor children wish to live with [mother], their wishes are only a single factor and not controlling, especially in view of their present ages and the reasons expressed by them." Specific visitation periods were established for mother.

In April, 1986, father, a former associate professor at the University of Missouri at St. Louis, filed a motion seeking permission to remove the children from Missouri to Texas, where he had taken a position with North Texas State University. Mother, in response, filed a motion which requested custody of the minor children.

At trial, father testified that he wanted the children to move to Texas because he believes it is important to keep the family unit together. He explained that the family participated in many activities together, attends church regularly, and that his second wife has a good relationship with the children. Father said that his children get along well with his wife's daughter who was born in 1978, as well as their son, who was born in November, 1984. Father participated in numerous activities with the children.

Dr. Ann Dell Duncan, a licensed clinical psychologist, to whom father had been referred by his attorney, described tests and the results of interviews conducted with father, his wife, and the children. As to the children of the parties, Dr. Duncan described them as being normal in intelligence, as well as flexible. Both children expressed to her their desire not to go to Texas, but rather to stay in St. Louis. They gave as reasons the desire to be with their friends, relatives, and mother, as well as that they like St. Louis. Dr. Duncan thought both children could handle the move to Texas, and that it would be in their best interests to move because the daughter is emotionally bonded to father's family unit and the son needed a male to whom he has an emotional attachment and who also sets rules and boundaries.

The court interviewed both children. Both children advised the court that they wanted to stay in St. Louis. If father had stayed in St. Louis, daughter would not want to change her living arrangement. However, the son gave conflicting answers about whether he wanted to remain with his father if his father was not moving to Texas.

On behalf of mother, Dr. Roger L. Gennari, a licensed clinical psychologist, testified about interviews he conducted with mother and the two children. Both children expressed their desire to remain in St. Louis. He expressed the opinion that it would be in the best interest for them to remain in St. Louis with their mother, which would promote stability in their lives.

Mother testified that she would be able to be at home with the children and would not need to work because of her estate from her late husband. She would have the daughter attend a nearby parochial grammar school, while the son would attend a parochial high school.

Father, when he left UMSL, was earning approximately $45,000.00 a year, assuming he taught both the regular school year and summer. At North Texas State, for a similar period, he will receive $72,000.00.

Mother, although not employed outside the home, has earnings from municipal bonds of approximately $18,000.00 a year. She also expects to receive about $225,-000.00 from her deceased husband's estate.

*Murphy v. Carron*, 536 S.W.2d 30, 36 (Mo. banc 1976), established that, in court tried cases, the judgment of the trial court will be sustained by an appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Appellate courts were admonished to "exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong."

Father first claims that the trial court erred in denying his motion for permission to remove the parties' minor children to Texas and in transferring custody of the children to mother. Father specifically argues that the court erroneously focused solely on the preferences of the children and ignored the best interest of the family.

■ Section 452.410 RSMo 1986 controls changes of custody and provides that a trial court "shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree ... that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child." Custody is not to be granted on the basis of a reward to or punishment of either parent. If the trial court finds a change of circumstances, then it must de-

cide what will be in the best interests of the children. *Knoblauch v. Jones*, 613 S.W.2d 161, 166 (Mo.App.S.D.1981).

In its order, the trial court found that a change of circumstances has occurred with father's move to Texas. Under § 452.410, the change may be that of "the child or his custodian." Here, the court found the change of circumstances in relation to the father, who was the custodial parent. Obviously, this is not in dispute.

■ The question which then presented itself to the trial court was whether modification was necessary to serve the best interests of the children. The court found the "stability these children have enjoyed in their lives would appear to be a result of their ties and connections in and to the St. Louis community."

Here, the children's mother resides in St. Louis, along with many friends and relatives, all of whom have developed meaningful relationships with the children. The children are active in community and school related events. In court, they stated their preference to remain in St. Louis with their mother. The expressed preference of a child is a factor to be considered in deciding custody under § 452.375.2(2) RSMo 1986. Although not conclusive, expressed preference of a child for one parent must be given great weight, *Warrington v. Warrington*, 684 S.W.2d 368, 372 (Mo.App.W. D.1984). Here children, fourteen and twelve years of age, with normal to above normal intelligence, told the trial court that they each desire to remain in St. Louis with their mother. Also, each child told two different clinical psychologists that they wanted to remain in St. Louis and live with their mother.

Thus, there was sufficient evidence presented to support the trial court's award of custody to the mother, and its decision is not against the weight of the evidence. Father's first point is denied.

Father also claims that the trial court erred in ordering him to pay mother $400 per month per child for child support because she introduced no evidence of the expenses for the children and she is well able to contribute to the support of the children.

■ From 1979 to 1981 when mother had custody of the children, father was paying $250 per month per child for their support. The children were then five to seven years younger than at the time of the hearing. At trial, mother asked for approximately $400 to $450 per month per child. As children grow older, they have more needs. *McGinley v. McGinley*, 513 S.W.2d 471 (Mo.App.W.D.1974). The children will be attending Catholic schools, for which there is added expense. The cost of living has increased between the time of the original award of child support in 1979 and the hearing on the motion to modify in 1986. Father's annual income went from $45,000 in 1985–86 to $72,000 in 1986–87. All of these matters were relevant for the trial court to consider in determining the amount of child support to be awarded and father's ability to pay. *McGinley* at 473.

The amount of child support awarded rests within the sound discretion of the trial court and we must defer to its judgment unless the evidence is "palpably insufficient" to support it. *In Re Marriage of D.M.S.*, 648 S.W.2d 609, 612 (Mo.App.W. D.1983). On the facts presented, we do not find the evidence to be "palpably insufficient", and therefore must defer to the judgment of the trial court. Point denied.

Father's final claim is that the trial court erred in ordering him to pay $1,600.00 towards mother's attorney's fees because she is better able to pay her own attorney's fees and she failed to establish the necessary circumstances to support an award of the attorney's fees.

■ Section 452.355 RSMo 1986 authorizes a trial court to order one party to pay attorneys' fees to another party "after considering all relevant factors including the financial resources of both parties." In *Kieffer v. Kieffer*, 590 S.W.2d 915, 918 (Mo. banc 1979), the Supreme Court commented "it would appear that our legislature intended that the court consider factors *in addition to* the financial resources of the parties," and by using the words they did, "the legislature allowed the trial judge con-

siderable discretion in awarding attorneys' fees." It may well be that mother had the means to pay her attorney, but a showing of financial need is not an absolute prerequisite to an award of attorneys' fees. *In re Marriage of Jackson*, 592 S.W.2d 875, 878 (Mo.App.S.D.1980). In addition, father was the originator of these court proceedings. We find no abuse of discretion here. Father's third point is denied.

The judgment is affirmed.

SIMON, P.J., and CRANDALL, J., concur.